UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LARRY M. ADKISSON, | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 3:24-cv-342 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| BRANDON FOSTER, JOE FARMER, | ) |
| MIKE PARRIS, AND FRANK STRADA, | ) |
| | ) |
|     *Defendants*. | ) |

## **MEMORANDUM & ORDER**

Plaintiff Larry M. Adkisson, a prisoner in the custody of the Tennessee Department of Correction ("TDOC"), filed a (1) pro se prisoner complaint under 42 U.S.C. § 1983 (Doc. 2) and (2) motion for leave to proceed *in forma pauperis* (Doc. 1). For the reasons set forth below, the Court will grant Plaintiff's motion and dismiss the complaint for failure to state a claim upon which relief may be granted.

**I.    MOTION TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. (*See* Doc. 1.) Accordingly, pursuant to 28 U.S.C. § 1915, the motion (Doc. 1) will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902 as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust

account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. *See* 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. *See* 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II. COMPLAINT SCREENING

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

B. **Plaintiff's Allegations**

On October 24, 2023, Plaintiff's cell at the Morgan County Correctional Complex ("MCCX") was searched by Defendant Brandon Foster and others while Plaintiff was taken to the shower area and strip searched. (Doc. 2 at 4.) No contraband was found on Plaintiff, but Defendant Foster told Plaintiff that he would be taken to lockup because methamphetamines and fentanyl were found in Plaintiff's cell. (*Id.*) During Plaintiff's transport to "lock-up," Defendant Foster stated he knew the drugs did not belong to Plaintiff and asked to whom they belonged. (*Id.*) When Plaintiff told Defendant Foster, Foster replied, "[T]hat is exactly who I thought it belonged to." (*Id.*)

On October 30, 2023, Defendant Foster and another officer came to interview Plaintiff, and Defendant Foster advised Plaintiff that forty-nine grams of methamphetamines, fentanyl, tobacco, and a cell phone were found in the sink in Plaintiff's cell. (*Id.* at 5.) Defendant Foster stated he knew the contraband did not belong to Plaintiff and asked why Plaintiff "allowed the 'Bloods' to store the contraban[d] in his cell." (*Id.*) Plaintiff told Defendant Foster that that Crips gang members had robbed him at knife point, and that a Bloods gang member offered Plaintiff the option of either (1) allowing the Bloods to store contraband in Plaintiff's cell in return for

3

protection or (2) refusing the Bloods' offer and risking the Bloods—who were named that "for a reason"— robbing Plaintiff. (*Id.*)

Plaintiff explained to Defendant Foster that he felt he had no real option, and he explained that "he had lost about all the weight he could stand" because the gang members stole his food. (*Id.* at 6.) Defendant Foster stated he believed Plaintiff and asked if Plaintiff had ever used the cellphone or knew the code to unlock the phone. (*Id.*) When Plaintiff stated he had never used the phone and did not know the code, Defendant Foster stated, "I can believe that because you spend over 200 dollars a month on phone calls alone." (*Id.*) Plaintiff told Defendant Foster that he did not know who was bringing the contraband into the facility, but he suspected that it was an employee. (*Id.*)

Defendant Foster told Plaintiff "he would see what he could do" but that he was going to charge Plaintiff with the contraband even though he knew it did not belong to Plaintiff. (*Id.*) Defendant Foster said this while spitting his tobacco juice in the trash can. (*Id.*) Plaintiff told Defendant Foster that it was absurd to charge him with a crime that TDOC's "incompetence and dereliction of duty created." (*Id.* at 7.) Plaintiff analogized the situation to the Transportation Security Administration allowing a bag with a bomb through security and then blaming the pilot when it exploded and brought down a plane. (*Id.*) "This abruptly ended the interview." (*Id.*)

On November 7, 2023, Plaintiff was placed in maximum security. (*Id.*) Defendant Foster finally concluded his investigation on November 13, 2023. (*Id.*) Thus, Plaintiff spent a total of 20 days in investigative segregation before being charged with two Class A infractions: possession of a cellphone and drug possession. (*Id.*)

On November 20, 2023, Defendant Joe Farmer informed Plaintiff that a disciplinary hearing would be held on Plaintiff's charges the following day. (*Id.* at 8.) Plaintiff asked

4

Defendant Farmer to ensure Defendant Foster would be there, and Defendant Farmer stated that he would be present. (*Id.*) But the next day, Defendant Foster was not at the hearing. (*Id.*) Plaintiff was told that Defendant Foster was on a telephone call and could not be disturbed. (*Id.*) No evidence was presented at the hearing, no witnesses were presented, no affidavits were entered, and the accuser was not present. (*Id.*) And under TDOC policy, Plaintiff "has the right to face his accuser and cross examine any witness." (*Id.*) Plaintiff asserted his due process rights and moved to dismiss the charges against him, but "his motions were summarily dismissed." (*Id.*) After a brief recess, the board members found Plaintiff guilty of the disciplinary offenses and "levied the maximum sentence allowed"—60 days punitive segregation, loss of visitation privileges for 6 months, loss of 1 year of good-conduct credits, 6 months of drug testing, and a $10 fine. (*Id.* at 9.)

Plaintiff appealed his disciplinary convictions to Defendants Warden Mike Parris and Commissioner Frank Strada, but his appeals were denied. (*Id.*) After 51 days, Plaintiff was released from punitive segregation and was sent to a close/medium-security unit. (*Id.*) Plaintiff has "made numerous requests to be transferred to a minimum[-]security unit" but "all requests have been summarily denied," (*Id.*) Plaintiff's placement in "the violent gang unit" is "by design[,]" as Defendants "are well aware of how senior, white, unaffiliated men are preyed upon in the young black gang units." (*Id.* at 11.)

Aggrieved by these events, Plaintiff asks the Court to award him monetary damages and commute the remainder of his sentence to time served, as "he has already been denied parole because of the above cited incident." (*Id.* at 12–13.)

5

Case 3:24-cv-00342-CLC-DCP   Document 5   Filed 08/23/24   Page 5 of 11   PageID #: 46

C.  Analysis

To state a claim against any Defendant for relief under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Plaintiff does not designate whether he is suing Defendants in their official capacities, their individual capacities, or in both capacities. Generally, "[a]bsent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989)). Nevertheless, out of an abundance of caution, the Court will presume Plaintiff intends to sue Defendants in both capacities.

1.  **Official-Capacity Claims**

Defendants are all TDOC employees. Suit against TDOC employees in their official capacities is the equivalent of suit against TDOC itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). And because the TDOC is an arm of the State of Tennessee, suit against a TDOC employee in his official capacity is suit against the State. *See Hix*, 196 F. App'x at 355 (holding TDOC is equivalent of the "State"). But "a state is not a person within the meaning of §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

Also, the Eleventh Amendment typically "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*,

6

465 U.S. 89, 100–01 (1984)). Because there has not been congressional abrogation or waiver of immunity, Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding § 1983 does not waive state sovereign immunity); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (holding Tennessee has not waived immunity to suit under § 1983). Thus, Plaintiff's suit against Defendants in their official capacities is impermissible and will be dismissed.

2.  **Individual-Capacity Claims**

To state a claim against a defendant in his personal capacity, a plaintiff must adequately plead that the particular defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor").

First, Plaintiff complains that he should not have charged with disciplinary offenses, because the contraband found in his cell did not belong to him. But inmates possess no right to be free from charges or convictions of prison disciplinary offenses. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974). This is true even if the charge turns out to be unfounded. *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are

7

subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."). Therefore, this allegation does not state a § 1983 claim.

Second, Plaintiff complains that his disciplinary hearing violated his due process rights and TDOC policy, as he was not allowed to face his accuser, and no evidence was presented. But "[p]rison disciplinary proceedings are not a part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. Plaintiff has no due process right to cross-examine his accuser at a disciplinary hearing. *See Wolff*, 418 U.S. at 567–69. But the loss of good-time credits as a result of a disciplinary conviction (such as occurred here) will typically implicate a liberty interest and require certain due process protections. *Id.* at 558. In such instances, a prisoner must receive "notice of the charges, an opportunity to present evidence, and a written decision explaining the finding of guilt." *Tate v. Quintana*, No. 18-6179, 2019 WL 5866596, at *1 (6th Cir. May 22, 2019) (citing *Wolff*, 418 U.S. at 563–66).

In this case, Plaintiff had ample notice of the charges, was given the assistance of an inmate advisor, and was provided a hearing where his disciplinary write-ups were used as evidence of the charges against him. (*See, e.g.,* Doc. 2 at 14–17, 21–25[1].) Due process does not require more. *See, e.g., Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 445, (1985) (holding procedural due process requires only "some evidence" to support findings made in disciplinary hearing). And while Plaintiff takes issue with the denial of his appeals, he has no due

---

[1] Plaintiff's attached disciplinary reports and hearing summary reports are considered part of his complaint. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings[.]" (citing Fed. R. Civ. P. 10(c))).

8

process right to appellate review of a disciplinary conviction. *Roundtree v. Dunlap*, No. 3:18CV1198, 2019 WL 3252912, at *6 (N.D. Ohio July 19, 2019) ("But a prisoner has no due process right to appeal a disciplinary conviction."); *Chance v. Compton*, 873 F. Supp. 82, 86 (W.D. Tenn. 1994) ("[A] right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff*."). Nor does Defendants' alleged failure to follow TDOC policy give rise to a constitutional claim, as TDOC policy and procedures do not create constitutionally protected interests. *See McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest); *see also Stanley v. Vining*, 602 F. 3d 767, 769 (6th Cir. 2010) ("It has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."). Accordingly, Plaintiff's disciplinary hearing did not violate his due process rights.

Next, Plaintiff complains about the consequences of his disciplinary convictions, which implicate his protected liberty interests only where the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, Plaintiff maintains that, as a result of the disciplinary charges against him, he was placed in segregation for approximately fifty-one days, lost visitation privileges and good-time credits, was given a $10 fine, and received a transfer to an increased security unit. But Plaintiff's status regarding his custody, housing, privileges, and fines do not give rise to due process protections. *See, e.g., Bazzetta v. McGinnis*, 430 F.3d 795, 804–05 (6th Cir. 2005) (finding no due process right to prison visitation because it is consistent with the status of being incarcerated); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan 24, 2017) (finding 30-day "loss of privileges . . . does not amount to an 'atypical and significant

9

hardship'") (citation omitted); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding fourteen-day loss of privileges and $3.00 sanction in disciplinary proceedings did not deprive inmate of protected liberty interest); *Harris v. Truesdell*, 79 F. App'x 756, 758 (6th Cir. 2003) (finding inmate's punishment of 60 days in punitive segregation did not give rise to protected liberty interest); *Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (holding increased security classification does not implicate due process rights).

Finally, any finding in Plaintiff's favor regarding the loss of his good-time credits as a result of his disciplinary convictions would render those proceedings invalid. And Plaintiff must demonstrate that the disciplinary convictions have been overturned or otherwise rendered invalid before he can obtain relief concerning the convictions in a § 1983 action. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (requiring criminal action to be ended favorably to accused to recover damages); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck*'s favorable-termination requirement to prison discipline hearings resulting in loss of good-time credits). Plaintiff has not shown that his disciplinary convictions have been rendered invalid, and therefore, his § 1983 claim is not cognizable. Moreover, Plaintiff cannot seek commutation of his sentence in a § 1983 action; the "sole federal remedy" for release from prison is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, the restrictions imposed on Plaintiff do not constitute an "atypical and significant hardship" compared to ordinary circumstances of prison life, and Plaintiff's allegations fail to state a claim upon which § 1983 relief may be granted. *Sandin*, 515 U.S. at 484.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 1) is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Plaintiff's complaint will be **DISMISSED without prejudice** for failure to state a claim upon which § 1983 relief may be granted; and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be frivolous. *See* Fed. R. App. P. 24.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**